IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DANIKA HARTWELL,　　　　　　　　　)
Individually and on behalf of a　　　　　 )
class of persons similarly　　　　　　　　)
situated,　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Case No. 1:18-CV-11895-DJC
v.　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
AMERICREDIT FINANCIAL　　　　　　　)
SERVICES, INC. d/b/a GM　　　　　　　 )
FINANCIAL,　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　 )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Michael T. Grant, BBO #677893
Charles A. Ognibene, BBO #377840
LECLAIRRYAN PLLC
60 State Street, Twenty-Third Floor
Boston, MA  02109
(617) 502-8200
michael.grant@leclairryan.com
charles.orgnibene@leclairryan.com

Robert J. Brener (admitted *pro hac vice*)
LECLAIRRYAN PLLC
One Riverfront Plaza
1037 Raymond Boulevard, Sixteenth Floor
Newark, New Jersey 07102
(973) 491-3347
robert.brener@leclairryan.com

December 28, 2018

## CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF ALLEGED FACTS ................................................................ 2

ARGUMENT ..................................................................................................... 4

I.     Standard of Review ................................................................. 4

II.    This Court should Dismiss Count I of the Amended Complaint because GMF reasonably relied on UCC § 9-614(3)'s safe-harbor language for pre-sale notices. ................................................. 5

    A.    The RISA and UCC govern the rights, obligations, and procedures concerning the sale of repossessed motor vehicles. ............................................................................. 5

    B.    In *Williams v. American Honda Finance Corp.*, the SJC held that the UCC's safe-harbor language was insufficient because it did not accurately state how deficiencies were to be computed under the RISA. ....................................... 6

    C.    This Court should not apply *Williams* to transactions that predate that decision. ................................................. 9

        1.    Courts can choose whether to apply decisions prospectively or retrospectively. ................................. 10

        2.    In *Eaton v. FNMA*, the SJC held that judicial interpretations of ambiguous property-law statutes should not be applied retrospectively. ....................... 11

        3.    The considerations that led the SJC to decline retrospective application in *Eaton* apply with greater force here. ................................................................. 12

    D.    Applying *Williams* retrospectively would violate the Due Process clause of the Fourteenth Amendment. ........................ 16

III.    This Court should dismiss Count II of the Amended Complaint. ................... 18

    A.    For the reasons stated in Section II, GMF did not engage in any deceptive trade practices. ................................. 18

    B.    Ms. Hartwell fails to allege any facts showing injury. ............... 18

CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Ins. Co. v. Robert Sueffer GMBH & Co.*,
  468 Mass. 109 (2014) ............................................................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 4

*Bouchard v. DeGagne*,
  368 Mass. 45 (1975) .............................................................................................. 12

*Boule v. City of Columbia*,
  378 U.S. 347 (1964) .......................................................................................... 16, 17

*DiFiore v. American Airlines, Inc.*,
  454 Mass. 486 (2009) ............................................................................................ 10

*Eaton v. FNMA*,
  462 Mass. 569 (2012) ...................................................................... 10, 11, 12, 14

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
  45 F.3d 530 (1st Cir. 1995) .................................................................................... 16

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ............................................................................................... 16

*Godinez v. Alere Inc.*,
  272 F. Supp. 3d 201 (D. Mass. 2017) ..................................................................... 4

*Hershenow v. Enterprise Rent–A–Car Co.*,
  445 Mass. 790 (2006) ............................................................................................ 19

*Holloman v. Clarke*,
  236 F. Supp. 3d 493 (D. Mass. 2017) ..................................................................... 5

*Livingstone Flomeh-Mawutor v. Banknorth, N.A.*,
  350 F. Supp. 2d 314 (D. Mass. 2004) .................................................................... 18

*Lyman v. Baker*,
  — F. Supp. 3d —, No. CV 18-10327-PBS, 2018 WL 6437070 (D. Mass. Dec.
  7, 2018) ................................................................................................................... 4

*Massachusetts Inst. of Tech. v. Research, Dev. & Tech. Employees Union*,
  980 F. Supp. 2d 8 (D. Mass. 2013) ..................................................................... 4, 5

*Mulder v. Kohl's Dep't Stores, Inc.*,
  865 F.3d 17 (1st Cir. 2017) ................................................................................... 19

*Papadopoulos v. Target Corp.*,
  457 Mass. 368 (2010) ............................................................................................ 12

905798287-1

*Payton v. Abbott Labs,*
     386 Mass. 540 (1982) ........................................................................... 14

*Rule v. Fort Dodge Animal Health, Inc.,*
     607 F.3d 250 (1st Cir. 2010) ............................................................... 19

*Shaulis v. Nordstrom, Inc.,*
     865 F.3d 1 (1st Cir. 2017) ............................................................. 19, 20

*Simmons v. Galvin,*
     575 F.3d 24 (1st Cir. 2009) ................................................................... 5

*U.S. v. Caseer,*
     399 F.3d 828 (6th Cir. 2005) ............................................................... 17

*United States v. Gamache,*
     792 F.3d 194 (1st Cir. 2015) ............................................................... 16

*Williams v. American Honda Finance Corp.,*
     479 Mass. 656 (2018) ................................................................... *passim*

*Williams v. American Honda Finance Corp.,*
     No. 858 F.3d 700 (1st Cir. 2017) .................................................... 8, 10

*Williams v. American Honda Finance Corp.,*
     No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016) ................. 8, 13

## **Statutes**

M.G.L. c. 106, § 9-614 ..................................................................... *passim*

M.G.L. c. 255B, § 20B ............................................................... 5, 6, 13

M.G.L., c. 93A, § 2 ................................................................................ 18

M.G.L., c. 93A, § 9 ................................................................................ 18

## **Other Authorities**

St. 2001, c. 26 §§ 47, 48 (H.B. 2111) .................................................. 13

U.S. Const. amend. XIV ..................................................................... 16

## PRELIMINARY STATEMENT

In April 2018, Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GMF") notified Plaintiff Danika Hartwell that her vehicle had been repossessed and—if not timely redeemed—would be sold at a private sale, with the proceeds credited against her indebtedness.  In sending this pre-sale notice, GMF relied on safe-harbor language that appears in M.G.L. c. 106 § 9-614(3).

Two months after GMF sent this notice, the Supreme Judicial Court of Massachusetts ("SJC") in *Williams v. American Honda Finance Corp.*, 479 Mass. 656 (2018) answered certified questions from the United States Court of Appeals for the First Circuit.  There, the SJC concluded that secured creditors could *not* rely on the pre-sale notice exemplar set out in § 9-614(3), at least where the collateral being sold was a motor vehicle.  The SJC's conclusion upended an earlier decision of this Court that had held that the safe-harbor language in § 9-614(3) was adequate.

In the present case, Ms. Hartwell seeks to apply *Williams* retroactively and to hold GMF liable for failing to anticipate the SJC's answers to the novel questions of Massachusetts law certified to the SJC in that case.  Because retroactive application of *Williams* violates both Massachusetts law and the Due Process provision of the 14th Amendment, this Court should dismiss Ms. Hartwell's Amended Complaint.

1

## STATEMENT OF ALLEGED FACTS[1]

1.      In April 2015, Ms. Hartwell purchased a motor vehicle (the "Vehicle") on credit and executed a Retail Installment Sale Contract, which contract was purchased by GMF (the "Contract").   ECF No. 16 (Am. Compl. ¶¶ 5-6.)  This was a purchase-money transaction, with Ms. Hartwell's credit obligation secured by the Vehicle.  A copy of the Contract is attached hereto as Exhibit A.[2]

2.      Under the Contract, a default by Ms. Hartwell entitled GMF to repossess and sell the Vehicle, thereby reducing her outstanding indebtedness.  *Id*. (Contract, p. 2 § 2(d) & (f)).

3.      On April 5, 2018, GMF repossessed the Vehicle.  ECF No. 16 (Am. Compl. ¶ 9.)

4.      On April 9, 2018, GMF sent Ms. Hartwell a letter stating its intent to sell the repossessed Vehicle (the "Pre-Sale Notice").  Id. (¶ 10.)

5.      GMF worded this Pre-Sale Notice to follow the safe-harbor provision in Article 9 of the Uniform Commercial Code that governs consumer sale notices for repossessed collateral. Its Pre-Sale Notice describes the effect of the sale on Ms. Hartwell's indebtedness under the Contract:

> The vehicle will be sold at a private sale after 20 days from the date of this notice.  *The money from the sale of this vehicle*, less any expenses incurred by GM Financial, *may reduce or increase the amount you owe*. You will be required to pay GM Financial the difference if the vehicle sells, including expenses, for less than the amount you owe.  If the vehicle sells, including expenses, for more than the amount you owe, you will receive a refund, unless it is necessary for GM Financial to forward this money to another party.

---

[1] Because this case comes before the Court on a 12(b)(6) motion, GMF recites the facts as they are alleged in the Amended Complaint.  In so doing, GMF does not concede the truth of any of the alleged facts or the merits of any of the legal claims that Ms. Hartwell asserts in her Amended Complaint.

[2] Ms. Hartwell references the Contract in ¶ 5 of her Amended Complaint.

ECF No. 16 (Am. Compl., Ex A) (emphasis added).[3]  The notice closes by describing Ms. Hartwell's right to redeem the Vehicle by paying off her debt before the sale.

6.      On July 17, 2018, Ms. Hartwell filed a purported class action in the Massachusetts Superior Court (Bristol County).  ECF No. 1.  The Complaint alleges that the above-quoted notice language does not accurately describe her rights under Massachusetts law.  She seeks relief under the Massachusetts version of the Uniform Commercial Code and under M.G.L. c. 93A.  *Id.*

7.      GMF timely removed the action to this Court.  ECF No. 1.

8.      Ms. Hartwell filed an Amended Complaint on November 21, 2018.  ECF No. 16.

9.      The Amended Complaint omits details about the circumstances prompting the repossession of the Vehicle, the conduct of the sale, and the extent to which Ms. Hartwell's indebtedness was reduced by the sale.  *Id.*

10.      For instance, Ms. Hartwell does not dispute that she was in default on her payment obligations.  *Id.*

11.      And she does not dispute that, in light of such default, repossession was appropriate.  *Id.*

12.      Furthermore, Ms. Hartwell does not say to what extent GMF credited her account as a result of the sale.  *Id.*

13.      And she does not say whether GMF sought a deficiency judgment against her.  *Id.*

14.      Instead, the Amended Complaint focuses exclusively on the wording of the April 9, 2018 Pre-Sale Notice that GMF sent to her.  *Id.*

---

[3] Exhibit A to the Amended Complaint includes a partial copy of the Pre-Sale Notice.  A complete copy is attached hereto as Exhibit B.

15.     Even on the notice issue, the allegations are sparse.  Ms. Hartwell does not, for example, allege that she read the April 9, 2018 notice before the sale.  *Id*.

16.     She does not allege that she relied on the notice.  *Id*.

17.     She does not allege how she would have acted differently had the notice been worded differently.  *Id*.

18.     And she does not state that her account was credited less than the fair market value of the Vehicle.  *Id*.

19.     In short, this case hinges on the wording of a notice letter: (1) that Ms. Hartwell never claims she read or relied on, and (2) concerning a sale whose justification, and ultimate outcome, she does not dispute.  *Id*.

## ARGUMENT

### I.     Standard of Review

In a 12(b)(6) motion, the Court "must analyze whether complaint contains sufficient factual matter to state a claim that is plausible on its face."  *Lyman v. Baker*, — F. Supp. 3d —, No. CV 18-10327-PBS, 2018 WL 6437070, at *2 (D. Mass. Dec. 7, 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

In reviewing the facts, the Court must accept as true all non-conclusory factual allegations and reasonable inferences therefrom.  *Holloman v. Clarke*, 236 F. Supp. 3d 493, 496 (D. Mass. 2017).  In addition, the Court may consider documents attached to the complaint, documents whose authenticity is not in dispute, documents that are central to the plaintiff's claims, and documents referred to in the complaint.  *Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 205 (D. Mass. 2017).

Cases that hinge on statutory-interpretation issues are well suited for disposition on a motion to dismiss.  *Massachusetts Inst. of Tech. v. Research, Dev. & Tech. Employees Union*,

4

980 F. Supp. 2d 8, 13 (D. Mass. 2013) ("[Q]uestions of statutory interpretation are questions of law ripe for resolution at the pleadings stage.") (quoting *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009)).

> **II.     This Court should Dismiss Count I of the Amended Complaint because GMF reasonably relied on UCC § 9-614(3)'s safe-harbor language for pre-sale notices.**
>
> **A.     The RISA and UCC govern the rights, obligations, and procedures concerning the sale of repossessed motor vehicles.**

In Massachusetts, two statutes govern the sale of repossessed motor vehicles: (1) the Massachusetts Motor Vehicle Retail Installment Sale Act, M.G.L. c. 255B, §§ 20A, 20B ("RISA" or the "Act") and (2) the Massachusetts Uniform Commercial Code, M.G.L. c. 106, §§ 9-610 to 9-625 ("UCC").

The RISA gives secured creditors the substantive rights to repossess and sell consumer motor vehicles.  Thus, § 20B(a) authorizes secured creditors to repossess motor vehicles where a consumer has materially defaulted on her payment obligations or has substantially impaired the collateral's value.  Section 20B(d) authorizes secured creditors to sell the repossessed vehicle after a redemption period.  And § 20B(e) authorizes creditors (1) to sue the debtor to recover the reasonable costs associated the repossession, and (2) to sue the debtor for a "deficiency,"  which it defines to mean the amount "resulting from deducting the *fair market value* of the collateral from the unpaid balance due." M.G.L. c. 255B, § 20B(e) (emphasis added).  Under the RISA, the credit to the debtor's account balance following the sale does not necessarily equal the actual amount the creditor receives in an auction or private sale.

Although it confers repossession rights, the RISA does not prescribe the procedures for selling the repossessed vehicle.  There are, for example, no provisions in the Act governing whether, when, or how a secured creditor must inform the defaulting consumer of her rights with

respect to a repossessed vehicle.  Instead, the RISA borrows those procedures from Article 9 of

the UCC—unless, that is, those procedures are otherwise "displaced by the provisions of" the

Act.  *Id.* § 20B(d) (citing Part 6 of Article 9 of the UCC, §§ 9-601 to 9-624).

The present case concerns pre-sale notifications.  UCC § 9-614 specifies the content and

form of the notices that secured creditors must send debtors before selling collateral.  Although it

does not require any specific verbiage for such notices, UCC § 9-614(2), it provides sample

language that, if used, "provides sufficient information" to the consumer.  UCC § 9-614(3).  This

safe-harbor language includes a description of how the proceeds of the sale will operate to

reduce the debtor's outstanding indebtedness.  But unlike the RISA, which says that the

outstanding indebtedness will be reduced by the vehicle's "fair market value," the safe-harbor

language states that the indebtedness will be reduced by "[t]he money we get from the sale."

UCC § 9-614(3).  UCC § 9-614 reassures secured creditors that using this language adequately

notifies consumers of upcoming sales of repossessed collateral.

GMF utilized § 9-614(3)'s safe-harbor language in its Pre-Sale Notice.  *See supra* at 2.

Thus, the Pre-Sale Notice states that Ms. Hartwell's indebtedness would be reduced by the

amount of the sale, rather than the vehicle's "fair market value."  Ms. Hartwell, however,

complains that the Pre-Sale Notice does not state that the deficiency is calculated based on the

"fair market value" of the Vehicle.  Thus, she contends, the notice was deceptive and misleading.

> **B.    In *Williams v. American Honda Finance Corp.*, the SJC
> concluded that the UCC's safe-harbor language was
> insufficient because it did not accurately state how
> deficiencies were to be computed under the RISA.**

Evaluating Ms. Hartwell's argument requires the Court to reconcile the UCC with the

RISA.  This boils down to the question of whether the RISA's method for calculating

deficiencies "displaced" UCC § 9-614(3)'s safe-harbor provision.

There is no easy answer to this question.  On one hand, the RISA itself does not have pre-sale notice procedures for repossessed vehicles.  So there is nothing in the RISA that directly corresponds to UCC § 9-614(3).  It is hard to see how a non-existent RISA provision could "displace" UCC § 9-614(3).  On the other hand, the sample notice in § 9-614(3) describes a procedure for reducing indebtedness that—at least for motor vehicles—is potentially inconsistent with the RISA.  So even if the RISA did not displace UCC § 9-614(3) *itself*, it displaced the debt-reducing procedures that UCC § 9-614(3) *describes*.

Because each of these arguments has some merit, the issue was a tough nut to crack.  Indeed, the SJC did not crack it until June 5, 2018, two months *after* GMF sent Ms. Hartwell the Pre-Sale Notice.  In *Williams*, the SJC—answering certified questions from the First Circuit—sided with the view that using the safe-harbor language was insufficient.  479 Mass. at 668.  It concluded that UCC § 9-614(3) was inconsistent with the RISA.  Thus, in cases involving motor vehicles, the SJC instructed repossessing creditors to disregard UCC § 9-614(3)'s safe-harbor language and to use a different formulation, which the SJC provided in its opinion.

The facts in *Williams* resemble those alleged here.  The defendant in that case—a secured creditor—repossessed the plaintiff's automobile and then sent her a pre-sale notice.  As in the present case, the notice followed the safe-harbor language in § 9-614(3), stating that:

> The money received from the sale (after paying our costs) will reduce the amount you owe.  If the auction proceeds are less than what you owe, you will still owe us the difference.  If we receive more money than you owe, you will receive a refund, unless we must pay it to someone else.

479 Mass. at 658-59.  The defendant then sold the vehicle at auction.  *Id.* at 659.

The plaintiff sued the defendant in state court alleging, among other things, that the pre-sale notice was inadequate inasmuch as it did not accurately describe how the deficiency would

be computed.[4]   The notice said that the deficiency would be calculated by deducting the "auction proceeds" (and expenses) from the outstanding indebtedness.   But, as noted above, the RISA actually requires that deficiencies be calculated by deducting the "the fair market value of the collateral" (and expenses) from the remaining indebtedness.   Thus, the plaintiff contended, the pre-sale notice deceptively misstated how the deficiency would be computed.

The defendant removed the case to this Court and moved for summary judgment. Magistrate Judge Boal recommended that the motion be granted because the defendant had complied with UCC § 9-614(3)'s safe-harbor provision.   *Williams v. American Honda Finance Corp.*, No. 1:14-CV-12859, 2016 WL 11507789, at *8 (D. Mass. Feb. 11, 2016).   This Court accepted the magistrate judge's recommendation and entered judgment for the defendant.   *Id.* at *1.

On appeal, the First Circuit determined that the issue was one of first impression.   Thus, it certified the following question[5] to the SJC:

> Whether, and in what circumstances, a pre-sale notice is "sufficient" under [UCC section 9-614(4) and (5)], and "reasonable" under [UCC section 9-611(b)], where the notice does not describe the consumer's deficiency liability as the difference between what the consumer owes and the "fair market value" of the collateral, and the transaction is governed by [the RISA]?

*Williams v. American Honda Finance Corp.*, 858 F.3d 700, 703 (1st Cir. 2017).

In its June 5, 2018 opinion, the SJC answered the certified question.   It held that—despite the UCC's assurance that using the safe-harbor notice would be "sufficient"—a pre-sale notice

---

[4] There was no evidence that the defendant ever attempted to collect a deficiency.   *Williams*, 479 Mass. at 659.

[5] It certified two other questions, but those are not germane to the present motion.

containing such language was *not* sufficient because it did not accurately state how such

deficiencies would actually be computed under Massachusetts law:

> Because the [UCC] and [the RISA] calculate deficiencies
> differently, the use of the Uniform Commercial Code safe harbor
> language is inconsistent with Massachusetts law.  The notice that is
> required by [the RISA] must describe the deficiency as the
> difference between the fair market value of the collateral and the
> debtor's outstanding balance because this is what is required by
> § 20B.

*Williams*, 479 Mass. at 669.

Recognizing the confusion and uncertainty that eliminating the UCC's safe harbor would

create, the SJC provided alternative language that would suffice under Massachusetts law:

> [W]hen creditors are providing notice prior to disposing of the
> collateral under § 9-614(3), the notice should include language
> similar to the following statement:
>
> "The *fair market value of your vehicle* will be used to reduce the
> amount you owe, *which is your outstanding balance plus the
> reasonable costs of repossessing and selling the vehicle.* If *the fair
> market value of your vehicle is less* than you owe, you (will or will
> not, as applicable) still owe us the difference. If *the fair market
> value of your vehicle is more* than you owe, you will get the extra
> money, unless we must pay it to someone else." (emphasis added)

*Id.*  The SJC concluded its analysis by stating that "the notice required by the [UCC] will only be

sufficient if it accurately describes the deficiency under [the RISA]."  *Id.*

### C.  This Court should not apply *Williams* to transactions that predate that decision.[6]

GMF sent Ms. Hartwell her pre-sale notice before *Williams* was decided.  Thus, the

principal question in the present case is whether *Williams* applies retroactively.  In certifying its

questions to the SJC, the First Circuit did not ask the SJC to decide whether its answer should

---

[6] GMF does not concede that, if *Williams* applies retroactively, its Pre-Sale Notice was
insufficient.  In the present motion, it simply argues that if *Williams* does not apply retroactively,
Ms. Hartwell fails to state a claim.

apply prospectively or retrospectively.[7]  The issue was left undecided.  In resolving that issue in

the present case, this Court should hold that *Williams* does *not* apply retroactively.

> 1.      Courts can choose whether to apply decisions
>          prospectively or retrospectively.

Case law usually applies both prospectively and retrospectively.  Courts can, however,

direct that a decision apply only prospectively.  When deciding whether to do so, courts examine,

*inter alia*, whether a new principle was established in the case; whether retroactive application

would further the new rule; and whether inequitable results, or injustice or hardships, will be

avoided by a holding of nonretroactivity.  *See Am. Int'l Ins. Co. v. Robert Sueffer GMBH & Co.*,

468 Mass. 109, 120-21 (2014).

Massachusetts law gives courts greater latitude to limit a ruling to prospective application

where, as here, the ruling "announces a new interpretation of a State statute."  *Id.* (internal quotes

and ellipsis omitted).  Moreover, Massachusetts courts generally refuse to apply a novel ruling

retroactively where, as here, it affects contract or property law.  *See Eaton v. FNMA*, 462 Mass.

569, 587-88 (2012).  This is because doing so would disturb the reliance interests of third parties

who—reasonably and in good faith—have transacted business under a different understanding of

the law.

---

[7] The defendant in *Williams* petitioned the SJC to reconsider its ruling and to apply the new rule
only prospectively.  *See Williams*, SJC-12367, Dkt. No. 20.  The SJC summarily denied this
petition with a one sentence response—most likely because the issue was not among the
questions that the First Circuit certified to the SJC.  *Id.*, Dkt. No. 21.  *See DiFiore v. American
Airlines, Inc.*, 454 Mass. 486, 488 n.4 (2009) ("We decline to address other questions posed by
the parties that have not been included in the certification order.") (citing cases).  The defendant
in *Williams* later raised a related due process argument in the First Circuit, but the First Circuit
declined to address it, finding that the argument had been waived.  *See Williams*, 907 F.3d at 87
(holding that defendant waived the argument that the SJC's decision violated its "constitutional
right to due process").

2. In *Eaton v. FNMA*, the SJC held that judicial
interpretations of ambiguous property-law statutes
should not be applied retrospectively.

*Eaton* is directly on point.  Like the present case, it involved an effort by the defendant, a secured creditor, to sell the debtor's property—the plaintiff's home—to satisfy a debt.  When the plaintiff refinanced her home, the promissory note went to the bank but the mortgage itself went to a third party mortgage-servicing company, which the bank had designated as its "nominee."  When the plaintiff defaulted on her loan, the nominee[8] sold it at a foreclosure sale.

The plaintiff moved for a preliminary injunction, arguing that the nominee was not a "mortgagee" under M.G.L. c. 231, § 118.  Although the nominee held the mortgage, the plaintiff claimed that, to be a true "mortgagee" for purposes of the statute, it also needed to hold the promissory note.  So the plaintiff claimed that the nominee had no authority to conduct foreclosure proceedings and that the sale was therefore void.  The trial court granted the plaintiff's motion.

On appeal, the SJC agreed with the plaintiff's reasoning, stating that, for purposes of the statute, "mortgagee" denoted "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder."  *Id.* at 571.  Nevertheless, the SJC held that its ruling would apply only prospectively—i.e., to foreclosure sales initiated *after* the date of its decision—stating that "we exercise our discretion to treat the construction announced in this decision as a new interpretation of the relevant statute, only to apply to foreclosures under the power of sale where statutory notice is provided *after the date of this decision*."  *Id.*

---

[8] Actually, the nominee's successor-in-interest, but this distinction made no difference in the case.  To simplify exposition, it will just be called the "nominee."

The SJC gave four reasons for refusing to apply its ruling retrospectively.  First, it noted that the term "mortgagee" was "not free from ambiguity" and that the issue had not been resolved by any of the court's prior cases.  Second, it noted that many "lawyers and others who certify or render opinions concerning real property titles have followed in good faith a different interpretation of the relevant statutes, *viz.*, one that requires the mortgagee to hold only the mortgage, and not the note."  Third, it noted that, "[i]n the property law context, we generally apply our decisions prospectively out of 'concern for litigants and others who have relied on existing precedents.'"  *Id.* (quoting *Papadopoulos v. Target Corp.*, 457 Mass. 368, 385 (2010)).  Fourth, it held that when a decision announces "a new interpretation of a State statute . . .we are . . . free to determine whether it should be applied only prospectively."[9]

> 3.      The considerations that led the SJC to decline retrospective application in *Eaton* apply with greater force here.

All four of the reasons in *Eaton* apply with equal—or greater—force in the present case.  First, the law regarding the proper wording of a pre-sale notice was "not free from ambiguity" before the SJC's decision in *Williams*.  The RISA does not have a notice provision, relying instead on UCC § 9-614.  And UCC § 9-614(3) unambiguously states that a pre-sale notice is sufficient if it contains the verbiage recited therein.  As noted above, this dichotomy presents a

---

[9] Although the SJC held that the rule would apply only prospectively, it nevertheless applied the rule to the case before it.  It observed that, under Massachusetts law, a "party seeking relief may be entitled to benefit from the rule announced in case, even when other 'somewhat similarly situated [parties] are not afforded the benefit of retroactive application of the principles established by that first appellate determination.'") (quoting *Bouchard v. DeGagne*, 368 Mass. 45, 48-49 (1975)).  However, Ms. Hartwell is not entitled to retrospective application of the rule because she did not establish the rule announced in *Williams*.

difficult legal issue.  Reasonable people can disagree on whether § 9-614(3) was "displaced" by the RISA.[10]  The interaction of the two statutes on this issue is, at best, unclear.

Second, creditors and lawyers have for years relied in good faith on an interpretation pursuant to which UCC § 9-614(3) was *not* displaced by the RISA.  The Court need not take GMF's word for it.  The Court, too, has relied on an interpretation pursuant to which UCC § 9-614(3) was not displaced by the RISA.  That was the basis for the underlying decision in *Williams*.  *See Williams*, 2016 WL 11507789, at *1, *8.  The First Circuit, too, found the issue far from clear.  Although it ordinarily has little difficulty predicting state law from prior precedent, the First Circuit deemed the safe-harbor issue to be sufficiently vexing as to warrant certification to the SJC.

Interpretive issues aside, there are practical reasons why a creditor, or its lawyers, would rely on the safe-harbor language § 9-614(3).  Varying the language in § 9-614(3) opens creditors up to litigation over the adequacy of the wording in their pre-sale notices.  Indeed, it is precisely to forestall this type of costly and unproductive litigation that the UCC included a safe-harbor provision.[11]  A prudent lawyer, pre-*Williams*, would not advise a client to use language that materially varied from § 9-614(3).

Third, like *Eaton*, the issue is one affecting property law.  Although the present case involves personal property, not real property, transactions involving motor vehicles closely

---

[10] Especially since UCC § 9-614 was enacted **after** the RISA.  *See* St. 2001, c. 26 §§ 47, 48 (H.B. 2111), effective Jul. 1, 2001, enacting the UCC and St. 1966, c. 284, § 3 and amended by St. 1973, c. 629, § 3, enacting M.G.L. c. 255B. M.G.L. c. 255B, § 20B was further amended by H.B. 2111 in 2001.  The amendments in 2001 were minor and reflected the addition of the new Part 6 concerning default. The displacement language of § 20B(d) was not amended. § 20B(e)(1) stating the deficiency should be calculated by "deducting the fair market value of the collateral from the unpaid balance due" was also not amended.

[11] And it is why *Williams* provided replacement language.

resemble those involving real estate. They are large purchases usually secured by the very property that is sold. More to the point, the process for foreclosing on real estate mirrors the process for repossessing and selling a motor vehicle.

As the SJC emphasized in *Eaton*, "[i]n the property law context, we generally apply our decisions prospectively out of 'concern for litigants and others who have relied on existing precedents.'" 462 Mass. at 571 (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 565 (1982)). Such concern applies here. At the time GMF issued its Pre-Sale Notice to Ms. Hartwell, the *only* precedent on the issue—this Court's opinion in *Williams*—stated that a creditor holding a security interest in a motor vehicle *could* rely on § 9-614(3)'s sample verbiage when preparing a pre-sale notice. Until the SJC's June 5, 2018 opinion in *Williams*, there was no alternate safe-harbor language that a creditor could use for pre-sale notices.

Fourth, *Williams* announced "a new interpretation of a State statute." *Eaton*, 462 Mass. at 588. As the SJC emphasized in *Eaton*, this is exactly the type of situation in which courts are "free to determine whether it should be applied only prospectively."

There are additional factors in the present case that counsel against retrospective application. Applying the SJC's decision in *Williams* to prior transactions would yield "inequitable results, or injustice or hardships." In tens of thousands of pre-*Williams* repossession sales, secured creditors have—not unreasonably—relied on the safe-harbor language in § 9-614(3).

The Massachusetts Legislature could have avoided this problem by either: (1) including a safe-harbor provision in § 20B that expressly "displaced" § 9-614(3)'s safe-harbor provision, or (2) adding language to § 9-614(3), which was enacted after § 20B, clarifying that the safe-harbor did not apply to consumer motor-vehicle transactions. It did neither, forcing secured creditors,

14

and this Court, to guess at the Legislature's intent.  It is inequitable and unjust to penalize GMF

for making a reasonable, but ultimately incorrect, decision as to what Massachusetts law required

to be included pre-sale notices.[12]

Conversely, *non*-retrospective application would cause little or no harm to Massachusetts

consumers.  The function of a pre-sale notice is to inform consumers of the impending sale,

advise them of their redemption rights, and explain what will happen if they do nothing.  A

misstatement in the notice about how the consumer's account will ultimately be credited—i.e.,

by the sale price instead of "fair market value"—is unlikely to change a defaulting consumer's

decision about whether to redeem the vehicle.  Indeed, the decision regarding whether to redeem

likely concerns whether the consumer can afford to do so, not how much the account will be

credited.   In such circumstances, any error in the pre-sale notice would be harmless.[13]

Finally, retrospective application of *Williams* will not advance the RISA's policy aims.

Now that the SJC has supplied secured creditors with alternative safe-harbor language,

automobile-finance companies can confidently revise the wording of their pre-sale notices

without fear of litigation.  Punishing them for pre-*Williams* notices—notices that were based on a

reasonable, but ultimately incorrect, determination about Massachusetts law—will not deter

---

[12] And GMF's decision was not alone.  Many other finance companies doing business in
Massachusetts made the same decision to follow the UCC safe-harbor language as evidenced by
the six putative class action lawsuits (including this one) that have been filed (all by Ms.
Hartwell's counsel) since the SJC answered the certified questions from the First Circuit in
*Williams*.  *See Randall v. Ally Financial*, Case No. 18-cv-30143 (D. Mass.), *Reid v. Santander
Consumer USA Inc.*, Case No. 18-cv-12470 (D. Mass.), *Thomson v. Eastern Bank*, Case No.
1884CV02667 (Mass. Super.) (Suffolk), *Dellorusso v. PNC Bank, N.A.*, Case No. 1877CV01475
(Mass. Super.) (Essex) and *Jiang v. Auto Equity Loans of DE LLC*, Case No. 1882CV00924
(Mass. Super.) (Norfolk).

[13] Moreover, after the sale the secured creditor would have to reduce the indebtedness by the
vehicle's "fair market value" regardless of the notice language (as required by the RISA), which
could be, but is not necessarily the sale amount.  And here, Ms. Hartwell does not allege that her
outstanding indebtedness was credited by less than what the RISA requires.

15

future misconduct.  It will only confer a windfall on plaintiffs' lawyers and consumers who suffered no actual damages.

Because retrospective application of *Williams* would be inequitable, unfair, and unavailing, this Court should decline to apply the decision retrospectively.

> ### D. Applying *Williams* retrospectively would violate the Due Process clause of the Fourteenth Amendment.[14]

Retrospective application of *Williams* also would raise Fourteenth Amendment Due Process issues.  The Constitution forbids states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  "[A] deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language."  *Boule v. City of Columbia*, 378 U.S. 347, 352 (1964).

Where a court places an unexpected gloss on seemingly clear statutory language, parties may be caught off guard.  The language "lulls the potential defendant into a false sense of security," giving him no reason to suspect that conduct seemingly outside the statute "will be retroactively brought within it by an act of judicial construction."  *Id.*  In this fashion, a statute that is, "on its face . . . narrow and precise," actually provides *less* notice than a facially vague statute "because the uncertainty as to the statute's meaning is itself not revealed until the court's

---

[14] This Court need not, and should not, address the Fourteenth Amendment issue if it finds that *Williams* does not apply retrospectively.  *United States v. Gamache*, 792 F.3d 194, 198 (1st Cir. 2015) ("[C]ourts should strive to avoid gratuitous journeys through forbidding constitutional terrain") (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 538 (1st Cir. 1995)).

905798287-1

decision." *Id.* By denying a party the "opportunity to engage in such speculation before committing the act in question," a seemingly clear statute creates a trap for the wary and unwary alike. *Id. See also U.S. v. Caseer*, 399 F.3d 828 (6th Cir. 2005) ("When the statute is precise on its face yet latently vague, the danger of persons being caught unaware of the criminality of their conduct is high.").

In the present case, UCC § 9-614 and the RISA, as construed by the SJC in *Williams*, did not give creditors fair notice of what they must include in pre-sale notices sent to the owners of repossessed motor vehicles. Nothing in the text of these two statutes alerted a secured creditor to the fact—announced for the first time in *Williams*—that a pre-sale notice must inform the debtor that deficiencies will be determined by subtracting "fair market value" from the outstanding indebtedness. To the contrary, UCC § 9-614 "lulls" creditors like GMF into a false sense of security, stating that a pre-sale notices is sufficient if it includes the language recited in § 9-614(3). On its face, UCC § 9-614(3)'s safe-harbor is clear and unambiguous. It provides no hint that the SJC might later deem it to be insufficient in cases involving motor vehicles.

Nor does the RISA provide any such notice. Although it describes the fair-market-value methodology, it does so only in the context of reciting the secured creditor's substantive obligations.[15] The RISA does *not* say what may, or must, appear in a secured creditor's pre-sale notice. That issue is addressed exclusively by UCC § 9-614. In short, neither statute fairly notifies auto-finance companies that the RISA "displaces" UCC § 9-614(3)'s safe-harbor provision. A natural reading of the RISA and UCC § 9-614(3) would lead an ordinary person to conclude that using UCC § 9-614(3)'s safe-harbor language in a pre-sale notice for a repossessed motor vehicle affords "sufficient" notice to the defaulting debtor.

---

[15] And indeed there is no allegation that GMF violated its substantive obligations.

To summarize: until the SJC announced the new rule in *Williams*, secured creditors like GMF were not on notice that compliance with UCC § 9-614(3) would expose them to liability. It was a trap—even for the wary.  Applying that trap to pre-sale notices sent out before the SJC's June 5, 2018 *Williams* decision would violate the Due Process clause of the Fourteenth Amendment.

### III.    This Court should dismiss Count II of the Amended Complaint.

#### A.    For the reasons stated in Section II, GMF did not engage in any deceptive trade practices.

Count II asserts a claim under the Massachusetts Consumer Protection Act, M.G.L., c. 93A, § 2, alleging that GMF engaged in practices "that were unfair, deceptive, and/or unconscionable."  (Am. Compl. ¶ 34.)  The only misconduct alleged in the Amended Complaint is GMF's purported violation of UCC § 9-614.  In other words, Ms. Hartwell alleges that GMF's reliance on and adherence to the safe-harbor language set forth in UCC § 9-614(3) was unfair and deceptive.  For the reasons stated above, GMF did not violate UCC § 9-614 and thus its actions could not be deemed "unfair, deceptive and/or unconscionable."  Accordingly, this Court should dismiss Count II.  *See, e.g.*, *Livingstone Flomeh-Mawutor v. Banknorth, N.A.*, 350 F. Supp. 2d 314, 321 (D. Mass. 2004) (granting summary judgment on 93A claim that was predicated on an already rejected fraud claim).

#### B.    Ms. Hartwell fails to allege any facts showing injury.

Ms. Hartwell's c. 93A claim fails for the additional reason that she does not allege any facts showing that she suffered objective identifiable harm.  A plaintiff may bring a claim under chapter 93A where he "*has been injured* by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder."  M.G.L. c. 93A § 9(1) (emphasis added).  Under Massachusetts law, a party

asserting a claim under c. 93A "must allege that she has suffered an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) (applying Massachusetts law); *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017) (same).  The harm must be "economic injury in the traditional sense."  *Shaulis*, 865 F.3d at 7.  A plaintiff who claims that "the unfair or deceptive act alone constitutes injury" fails to state a claim under c. 93A.  *Id.*

In *Shaulis*, the plaintiff sued a department store for deceptive pricing practices.  The alleged facts showed that the store put a "compare at" price on its price tags.  They also included a percentage showing what the consumer allegedly "saved" by purchasing the item at the store's price instead of the comparison price.  The plaintiff alleged that this pricing technique was deceptive and that it had enticed her to buy a sweater that she otherwise would not have bought. This Court dismissed the plaintiff's c. 93A claim, holding that the plaintiff had not alleged sufficient economic harm to satisfy § 9(1)'s "injury requirement."  *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 51 (D. Mass. 2015) (citing *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010) and *Hershenow v. Enterprise Rent–A–Car Co.*, 445 Mass. 790, 802 (2006)).

On appeal, the First Circuit affirmed.  The court reviewed recent SJC cases about whether alleging an unfair trade practice was, standing alone, sufficient to establish injury for purposes of c. 93A § 9(1).  It noted that the SJC "had 'moved away' from the 'per se' injury theory of injury supported by earlier cases . . . and had 'returned to the notion that injury under [C]hapter 93A means economic injury in the traditional sense.'"  *Shaulis*, 865 F.3d at 7 (quoting *Rule*, 607 F.3d at 254-55).  After tracing the modern progression of Massachusetts law on the issue, it concluded that "legally cognizable injuries under Chapter 93A must involve objective, 'identifiable' harm

19

that goes beyond the deception itself." *Id.* at 10.  Applying that principle, it found that dismissal was appropriate because the plaintiff's allegations did not satisfy the identifiable-harm requirement.  *Id.*

In the present case, too, Ms. Hartwell fails to allege any facts establishing "objective, identifiable" harm.  She does not claim that she relied on the Pre-Sale Notice when deciding whether to redeem the Vehicle.  Nor does she allege that she had the financial wherewithal to redeem the Vehicle at the time.  Indeed, Ms. Hartwell does not even allege that she *read* the Pre-Sale Notice at the time.

Instead of alleging objective and identifiable economic harm, Ms. Hartwell merely claims that GMF's actions "depriv[ed]" her and other class members "of accurate information that would allow them to protect their interests, understand their debts, assert their rights, and make informed financial decisions."   ECF No. 16 (Am. Compl. ¶ 36.)  But depriving a plaintiff "of accurate information" is the alleged *deception*, not the *injury* resulting from it.  As the First Circuit made clear in *Shaulis*, a party who fails to allege harm that is distinct from the deception itself does not state a claim under c. 93A.  Because the Amended Complaint fails to allege any such harm, Ms. Hartwell's c. 93A claim fails as a matter of law.

## CONCLUSION

For all the foregoing reasons, GMF respectfully requests that the Court grant its Motion to Dismiss, dismiss the Amended Complaint with prejudice, and enter judgment for GMF.

905798287-1

Respectfully submitted,

AMERICREDIT FINANCIAL SERVICES, INC.
d/b/a GM FINANCIAL,
By its attorneys,


/s/ Michael T. Grant
Michael T. Grant, BBO #677893
Charles A. Ognibene, BBO #377840
LECLAIRRYAN PLLC
60 State Street, Twenty-Third Floor
Boston, MA  02109
(617) 502-8200
michael.grant@leclairryan.com
charles.orgnibene@leclairryan.com


Robert J. Brener (admitted *pro hac vice*)
LECLAIRRYAN PLLC
One Riverfront Plaza
1037 Raymond Boulevard, Sixteenth Floor
Newark, New Jersey 07102
(973) 491-3347
robert.brener@leclairryan.com

## <u>CERTIFICATE OF SERVICE</u>

I, Michael T. Grant, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 28, 2018.

_____/s/ Michael T. Grant_____
Michael T. Grant

905798287-1