IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIKA HARTWELL, Individually and on behalf of a class of persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICREDIT FINANCIAL SERVICES, INC. d/b/a GM FINANCIAL,<br><br>Defendant. | Case No. 1:18-CV-11895-DJC |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Michael T. Grant, BBO #677893
Charles A. Ognibene, BBO #377840
LECLAIRRYAN PLLC
60 State Street, Twenty-Third Floor
Boston, MA 02109
(617) 502-8200
michael.grant@leclairryan.com
charles.orgnibene@leclairryan.com

Robert J. Brener (admitted *pro hac vice*)
LECLAIRRYAN PLLC
One Riverfront Plaza
1037 Raymond Boulevard, Sixteenth Floor
Newark, New Jersey 07102
(973) 491-3347
robert.brener@leclairryan.com

February 1, 2019

# CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .........................................................................................................................1

    I.     **This Court should not apply *Williams* to transactions that preceded it.** ...................................................................................................1

          A.    *Williams* resolved a difficult legal issue about which reasonable persons could—and did—disagree. ...........................................2

          B.    Retroactively applying *Williams* would not advance UCC § 9-614(3)'s policy objectives. ..............................................................7

          C.    GMF should not pay a massive penalty for failing to anticipate *Williams*. ..................................................................................7

    II.    **Retroactively applying *Williams* would violate Due Process.** .............................9

    III.   **Plaintiff fails to state a claim under Chapter 93A.** ...........................................11

          A.    By relying on § 9-614(3)'s safe-harbor, GMF did not engage in "unfair, deceptive, and/or unconscionable" practices. ......................................................................................................11

          B.    Plaintiff fails to identify any objective, identifiable harm separate from the alleged violation. ............................................................12

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Davis v. Grimes*,
  9 F.Supp.3d 12 (D. Mass. 2014) .............................................................................. 9

*Easthampton Sav. Bank v. City of Springfield*,
  736 F.3d 46 (1st Cir. 2013) ..................................................................................... 4

*Eaton v. FNMA*, 462 Mass. 569 (2012) ........................................................................ 8

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ............................................................................................. 10

*Ferreira v. Sterling Jewelers, Inc.*,
  130 F. Supp. 3d 471 (D. Mass. 2015) ................................................................... 12

*Fortin v. Titcomb*,
  671 F.3d 63 (1st Cir. 2012) ..................................................................................... 4

*Freeman v. Town of Hudson*,
  849 F. Supp. 2d 138 (D. Mass. 2012), *aff'd*, 714 F.3d 29 (1st Cir. 2013) ............... 2

*Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*,
  445 Mass. 790 (2006) ..................................................................................... 12, 13

*J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc.*,
  365 F. Supp. 2d 119 (D. Mass. 2005) ..................................................................... 3

*Knott v. Racicot*,
  442 Mass. 314 (2004) ............................................................................................. 8

*Kohl v. Silver Lake Motors, Inc.*,
  369 Mass. 795 (1976) ........................................................................................... 13

*Lannan v. Levy & White*,
  186 F. Supp. 3d 77 (D. Mass. 2016) ..................................................................... 12

*Mulder v. Kohl's Dep't Stores, Inc.*,
  865 F.3d 17 (1st Cir. 2017) ................................................................................... 12

*Payton v. Abbott Labs*,
  386 Mass. 540 (1982) ............................................................................................. 8

*Plumley v. S. Container, Inc.*,
  303 F.3d 364 (1st Cir. 2002) ................................................................................... 3

*Shapiro v. City of Worcester*,
  464 Mass. 261 (2013) ......................................................................................... 5, 7

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017) ..................................................................................... 12

*Wesson v. Leone Enters., Inc.*,
  437 Mass. 708 (2002) ............................................................................................. 8

*Williams v. Am. Honda Fin. Corp.,*
  479 Mass. 656 (2018) .................................................................................. 1, 4, 6, 10

*Williams v. Am. Honda Fin. Corp.,*
  858 F.3d 700 (1st Cir. 2017) ................................................................................ 3, 4

*Williams v. Am. Honda Fin. Corp.,*
  D. Mass. No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016) .................... 3, 10

*Williams v. Am. Honda Fin. Corp.,*
  907 F.3d 83 (1st Cir. 2018) .................................................................................. 5, 9

**Statutes**

M.G.L. c. 106, § 9-614 ............................................................................................ *passim*

M.G.L. c. 255B, § 20B ...................................................................................................... 12

## ARGUMENT

**I. This Court should not apply *Williams* to transactions that preceded it.[1]**

In its opening brief, GMF noted that a court may restrict a ruling to prospective application only where: (1) the ruling was not clearly foreshadowed by existing law, (2) retrospective application of the ruling would not advance the policies underlying it, and (3) retrospective application would yield inequitable results. GMF further noted that restricting a ruling to prospective application is especially appropriate where the ruling establishes a new interpretation of a statute or concerns a matter of property law.

In her opposition brief, Plaintiff does not contest any of these legal principles. Instead, she argues that *Williams v. Am. Honda Fin. Corp.*, 479 Mass. 656 (2018) does not satisfy these conditions for non-retrospective application. Thus, for example, she claims that the legal issue presented in *Williams* was a "simple" one whose resolution merely required a straightforward application of existing law. (Pl. Br. at 6-9.) She claims that retrospectively applying the *Williams* decision would advance the consumer-protection policies underlying UCC § 9-614. (*Id.* at 9-10.) And she claims that doing so would not impose any hardships on GMF. (*Id.* at 10.)

For the reasons stated below, these arguments are baseless. The legal issue in *Williams* was a difficult one. Indeed, the First Circuit asked the SJC to reconcile two apparently conflicting statutes after concluding that there was no controlling precedent and that it was unclear how Massachusetts courts would resolve the issue. Retrospectively applying *Williams*

---

[1] On page 12 of her brief, Plaintiff notes that "the SJC did not indicate that its decision in *Williams* would only apply prospectively." As GMF explained in its opening brief, however, the First Circuit did not certify a question to the SJC regarding application and so the SJC did not resolve it one way or the other. (GMF Br. at 9-10.) The absence of a holding is not a holding of absence.

would not advance consumer-transparency policies because the decision cannot change notices that were sent in the past. Finally, applying *Williams* retrospectively would unfairly punish creditors by imposing massive penalties on them despite their reasonable reliance on the UCC's safe-harbor language and award monetary damages to persons who allege no harm, injury or monetary loss.

### A. *Williams* resolved a difficult legal issue about which reasonable persons could—and did—disagree.

Take first Plaintiff's suggestion that the SJC's answer to one of the certified questions in *Williams* was easily foreseen. In her brief, Plaintiff argues that "the SJC did not create any new law or a novel rule." (Pl. Br. at 6.) Instead, she claims, the SJC "merely restated an existing rule." (*Id.*) Elaborating, Plaintiff contends that "the SJC's decision is the result of a plain text reading of the UCC and the RISA." (*Id.*) Thus, she characterizes the holding in *Williams* as a "simple" one, which lenders should not have been surprised about. (*Id.* at 7-8.) To support this last argument, Plaintiff—going outside the pleadings—cites pre-sale notices that other creditors sent out before the *Williams* decision. (Pl. Br. at 8.) These notices, which do not rely on the UCC's safe-harbor language, satisfy the rule recited in *Williams*.[2]

Plaintiff's argument ignores the fact that—before *Williams* reconciled the two statutes— the UCC and the RISA were at odds with each other. As GMF noted in its opening brief, the RISA borrows its procedures (including the pre-sale notice provision in § 9-614) from the UCC. UCC § 9-614, in turn, has a safe-harbor provision that assures creditors that if they worded their pre-sale notices as suggested therein, they would be "sufficient." § 9-614(4)("A notification in the form of paragraph 3 [the safe-harbor provision] is sufficient . . . "). It would seem to follow,

---

[2] Plaintiff's reliance on these pre-sale notices is improper. *See Freeman v. Town of Hudson*, 849 F. Supp. 2d 138, 148 (D. Mass. 2012), *aff'd*, 714 F.3d 29 (1st Cir. 2013) (refusing to consider six exhibits attached to an opposition to a motion to dismiss).

2

therefore, that so long as a creditor satisfied the safe-harbor provision, its notices about repossessed motor vehicles would be "sufficient" under § 9-614. Otherwise, the safe-harbor provision would be rendered meaningless, a conclusion that violates the basic canon of statutory interpretation "that all words in a statute are presumed to have meaning and should be given full effect when feasible." *Plumley v. S. Container, Inc.*, 303 F.3d 364, 371 (1st Cir. 2002); *J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc.*, 365 F. Supp. 2d 119, 137 (D. Mass. 2005) (rejecting a statutory interpretation that would render the statute "completely ineffectual").

The problem arises because the § 9-614(3)'s safe-harbor governs the <u>form</u> of pre-sale notice while RISA governs how to <u>calculate</u> a deficiency. The safe-harbor provision recites that the borrower's debt would be credited by the proceeds from the sale. But the RISA states that a consumer's debt should be credited by the "fair market value" of the vehicle. Thus, the RISA incorporates a safe-harbor provision that, paradoxically, does not describe how the RISA computes deficiencies. The First Circuit certified the matter to the SJC to help it "reconcile the provision of a safe-harbor form of notice under UCC section 9-614 with MVRISA's mandate concerning the credit due upon sale." *Williams v. Am. Honda Fin. Corp.*, 858 F.3d 700, 703 (1st Cir. 2017), *certified question answered*, 479 Mass. 656 (2018).

How to reconcile the two statutes was not obvious. Applying the plain language of the two statutes, a reasonable person could conclude that using the safe-harbor provision would insulate them from liability. That is, after all, the conclusion that this Court had reached when analyzing the issue. *Williams v. Am. Honda Fin. Corp.*, D. Mass. No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016), *aff'd in part, vacated in part, rev'd in part*, 907 F.3d 83 (1st Cir. 2018).

3

Alternatively, a person could conclude that—because the safe-harbor language did not recite how to compute deficiencies under RISA—it should *not* be used for pre-sale notices concerning repossessed motor vehicles. This is what the SJC ultimately concluded. *Williams*, 479 Mass. at 669. Contrary to Plaintiff's argument, however, this was not a "simple" matter of applying an "existing rule" to the "plain text" of the statutes. It required the SJC to adopt a <u>new</u> rule—publishing for the first time <u>new</u> safe-harbor language—to resolve a legislative conflict.

Plaintiff, however, claims that the SJC's decision in *Williams* was "obvious" and was clearly foreshadowed by prior authority. (Pl. Br. at 6-9.) Yet if that were the case, this Court would have reached a different conclusion in the underlying judgment. And the First Circuit would not have certified the matter to the SJC, on its own initiative no less, to "<u>reconcile</u> the provision of a safe-harbor form of notice under UCC section 9-614" with the Massachusetts Motor Vehicle Retail Installment Sales Act, "concerning which the Massachusetts courts <u>have not spoken</u>." *Williams*, 858 F.3d at 701,703 (emphases added), *citing Fortin v. Titcomb*, 671 F.3d 63, 66 (1st Cir. 2012) (certifying questions of statutory construction to the Maine Supreme Judicial Court on the court's own initiative "[b]ecause that examination raises significant and difficult issues of Maine law on which there is no controlling precedent."). *See also Easthampton Sav. Bank v. City of Springfield*, 736 F.3d 46, 50 (1st Cir. 2013) (holding that certification under Mass. S.J.C. R. 1:03 is appropriate only where it is unclear how the state court would rule).

Further, in taking and ruling on the certified questions, the SJC announced language that "should" be used to "replace[]" the UCC safe-harbor language. *Williams*, 479 Mass. at 669. In interpreting the SJC's answers, the First Circuit then described that the SJC had "read the <u>ambiguous</u> statutory requirements" and "<u>now</u> made it clear that a creditor's use of the UCC safe-

4

harbor language in deficiency notification is inadequate under Massachusetts law." *Williams*, 907 F.3d 83, 87 (1st Cir. 2018) (emphases added).

Thus by the courts' own observations, the SJC's rewriting of the safe-harbor language was not clearly foreshadowed. *See, e.g., Shapiro v. City of Worcester*, 464 Mass. 261, 269 (2013) (declining to apply retroactively statutory interpretation by SJC that followed "no indication" that prior case law "strayed from the legislative intent").

In her brief, Plaintiff also claims that three creditors' pre-*Williams* pre-sale notices did not track § 9-614(3)'s safe-harbor language.[3] These notices instead stated that deficiencies would be calculated using the vehicle's "fair market value," as Massachusetts law now requires pursuant to *Williams*. But the fact that *some* creditors (again, just two) chose to abandon the statutorily-prescribed safe-harbor language does not show that, pre-*Williams*, Massachusetts law clearly and unambiguously required creditors to do so.[4] Many *other* creditors continued to rely on § 9-614(3)'s safe-harbor.[5] The existence of these two different classes of pre-sale notices shows, at most, that reasonable people could—and did—come to different conclusions on the

---

[3] In fact, only two of the three notices were pre-sale notices. The Exeter notice was a post-sale deficiency notice, making it irrelevant for purposes of Plaintiff's argument. (Pl. Br.at Exh. F).

[4] There are nearly 180 Mass state-chartered banks and credit unions (https://www.mass.gov/orgs/division-of-banks) and scores of licensed non-banks financing motor vehicle transactions (https://www.mass.gov/lists/download-a-list-of-approved-licensees). Presumably, if these entities abandoned the safe-harbor language in their pre-sale notices, Plaintiff would have identified them here.

[5] As GMF noted in its opening brief, Plaintiff's counsel has brought at least five other putative class action lawsuits against creditors which have allegedly run afoul of the UCC because their pre-sale notices (issued pre-*Williams*) followed the safe-harbor language of § 9-614. (GMF Br. p. 17 fn. 12).

5

issue. Plaintiff is wrong to assert that *Williams* was clearly foreshadowed by pre-existing Massachusetts law.[6]

Finally, Plaintiff—again going outside the pleadings—cites the *post*-sale notice that GMF sent to her, which describes how GMF calculated her deficiency. As this notice reflects, GMF complied with the RISA, computing Plaintiff's deficiency by deducting the vehicle's "fair market value" from her outstanding indebtedness. Plaintiff claims that this shows that GMF knew that it could not rely on § 9-614(3)'s safe-harbor language. On the contrary, GMF's pre-sale and post-sale notices demonstrate that GMF fully understood and respected its (i) notice obligation under the UCC by utilizing the safe-harbor language of § 9-614 and (ii) deficiency calculation obligation under RISA by deducing the vehicle's "fair market value" from Plaintiff's outstanding balance.

Plaintiff's argument is also a non-sequitur. GMF's compliance with its deficiency-calculation and *post*-sale notice obligations has zero bearing on the sufficiency, *vel non*, of its *pre*-sale notice. The latter question instead turns on whether, before *Williams*, creditors reasonably could rely on UCC § 9-614(3)'s safe-harbor language. For the reasons stated above and in GMF's opening brief, this was an open legal question until finally addressed and resolved in *Williams*.

---

[6] Plaintiff cites a passage from Chief Justice Gants' dissent in *Williams* that states that "[a]ny doubt on *this issue* was resolved in 2001." (Pl. Br. at 8) (emphasis added). Plaintiff suggests that "this issue" refers to the continued viability of § 9-614(3)'s safe-harbor for pre-sale notices. But the context of the remark instead shows that "this issue" refers to whether "fair market value" means "fair market *retail* value." 479 Mass. at 678. The present case does not raise "this issue."

### B. Retroactively applying *Williams* would not advance UCC § 9-614(3)'s policy objectives.

In her brief, Plaintiff contends that retroactively applying *Williams* would advance the consumer-protection aims of UCC § 9-614. But when she actually describes the benefits that retroactive application would provide, Plaintiff subtly shifts from the past to the present tense, stating that "the *Williams* decision furthers the purpose of the RISA and UCC in providing consumers with some measure of transparency." (Pl. Br. at 10.) By clarifying the law, *Williams* may indeed provide that benefit *for transactions occurring after it was decided*. But that is not the question before the Court. The question, rather, is whether applying *Williams* to transactions that preceded it—at a time when the law was still murky—would advance the statute's consumer-protection aims.

It would not. The principal effect of *Williams* was to supplant § 9-614(3)'s safe-harbor provision with judicially crafted language. Any increased transparency created by this change will, logically, affect only those cases arising after the decision. Notices sent before the *Williams* decision are, from a policy standpoint, water under the bridge. Yet the retroactivity issue concerns *only* the notices sent before the *Williams* decision. Thus, applying *Williams* retroactively would not advance the policy aims of the UCC or the RISA. *See Shapiro*, 464 Mass. at 269-70 (examining purpose behind law and concluding that retroactive application of decision would not further that purpose).

### C. GMF should not pay a massive penalty for failing to anticipate *Williams*.

Finally, Plaintiff argues that "no injustice or hardship will befall GM[F] by retroactively applying *Williams*." (Pl. Br. at 10.) As in her policy analysis, however, Plaintiff's retroactivity discussion shifts from the past to the present tense. Thus, she argues that "GM[F] need only change the text of its form repossession notices in order to comply with the law." (*Id.*)

7

This argument misses the point. The question is not whether GMF's changing its notice practices will impose a hardship now or in the future. The question is whether penalizing GMF (and other creditors) for pre-sale notices sent before *Williams*—in amounts that may total hundreds of millions of dollars—will impose an unfair hardship.[7]

It will. As noted above, before *Williams*, a reasonable creditor could conclude that it was safe to rely on the UCC's safe-harbor provision for pre-sale notices. Indeed, at the time GMF sent its pre-sale notice to Plaintiff, the only authority addressing the issue—this Court's underlying decision in *Williams*—held that a notice using § 9-614(3)'s safe-harbor language was "sufficient." Thus, in determining the content of its pre-sale letter, a creditor could reasonably conclude that it could shelter under § 9-614(3)'s safe-harbor.

In *Eaton v. FNMA*, the SJC observed that "[i]n the property law context, we generally apply our decisions prospectively out of 'concern for litigants and others who have relied on existing precedents.'" 462 Mass. 569, 571 (2012), *quoting Payton v. Abbott Labs*, 386 Mass. 540, 565 (1982)).[8] *See also Knott v. Racicot*, 442 Mass. 314, 324 (2004) ("retroactivity generally is not appropriate where it would alter[] rights in Massachusetts contract and property law where issues of reliance might impose hardship on unsuspecting parties.") (internal quotes omitted, emphasis added); *accord Wesson v. Leone Enters., Inc.*, 437 Mass. 708, 721 n.26 (2002) ("Such concerns are compelling where the change of existing laws involves a previously

---

[7] Under Plaintiff's theory of retroactive application, creditors would be penalized UCC damages of contract finance charges plus 10% of principal for effectively every repossession they conducted in Massachusetts during the past four years.

[8] Unlike *Eaton*, the SJC in *Williams* was constrained to answer only the three discrete questions certified by the First Circuit, and so it did not address the prospective or retrospective application of its answers because it was not asked to do so. *See Woodward v. Comm'r of Soc. Sec.*, 435 Mass. 536, 538 (2002) ("We answer only the certified question."); *accord DiFiore v. American Airlines, Inc.*, 454 Mass. 486, 488 n.4 (2009) ("We decline to address other questions . . . that have not been included in the certification order.") (citing cases).

unquestioned aspect of ... law, in which reliance interests exert a strong influence.") (internal quotes and citation omitted).

Where, as here, an existing conflict between two statutes obscures a party's rights and obligations, the concern for litigants should be even greater. Imposing harsh and punitive penalties on GMF (and other creditors) for its good-faith interpretation of conflicting and unclear law is unjust and inequitable.

On the other side of the ledger, limiting *Williams* to prospective application will not result in any inequity or injustice to consumers. In her brief, Plaintiff fails to identify any hardship that she or other similarly situated debtors would suffer if *Williams* were to be limited to prospective application. Nor can she. Plaintiff does not allege that she read, let alone relied on, the pre-sale notice that GMF sent to her. Nor does she allege any injury resulting from the wording of the notice. Thus, limiting *Williams* to prospective application will not impose any hardship on Plaintiff or the putative class members.

The balance of equities, in short, weighs heavily against retroactive application.

**II.     Retroactively applying *Williams* would violate Due Process.**

Because this Court can decide this case by applying Massachusetts law governing prospective application of judicial decisions, it need not—and therefore should not—reach GMF's 14th Amendment arguments. *See Davis v. Grimes*, 9 F.Supp.3d 12, 15 (D. Mass. 2014) (noting that a court should avoid reaching federal constitutional grounds where cases can be disposed of on state-law statutory grounds).

To the extent the Court deems it necessary to address GMF's constitutional arguments, however, it should find that punishing GMF for its failure to anticipate *Williams* would violate core Due Process considerations. The law, as it existed before *Williams*, did not give creditors adequate notice of how to shape their conduct to avoid liability. *See Williams,* 907 F.3d at 87

9

(acknowledging the "ambiguous statutory requirements" which warranted *sua sponte* certification to the SJC). It would thus be manifestly unjust and unfair to allow a claim against GMF to proceed when it did not have "fair notice" of the change in law effected by *Williams*. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (setting aside order because guidelines applied to regulated parties were vague and did not provide fair notice of prohibited conduct).

Arguing against these points in her opposition brief, Plaintiff notes that vagueness principles apply less strictly to economic legislation because businesses can "consult relevant legislation." (Pl. Br. at 13.) But consulting the statutes would not have helped GMF because the statutes themselves were in conflict. The best demonstration of this is the Court's own opinion in *Williams*. Magistrate Judge Boal certainly consulted the relevant legislation. *Williams*, 2016 WL 11507789, at *8. Yet Judge Boal came to the same conclusion as GMF did.[9]

Plaintiff then repeats her argument that, even before *Williams*, some finance companies issued pre-sale notices that did not rely on UCC § 9-614(3)'s safe-harbor language but instead referenced the "fair market value" of vehicles. Once again, this argument actually supports GMF's position. When a law is ambiguous, one would expect different people to interpret it differently. So the fact that two finance companies guessed correctly does not mean that the law was clear; it just means they were lucky. More to the point, it does not mean that those who guessed wrongly acted unreasonably.

---

[9] Plaintiff also argues that businesses can sometimes seek clarification of the law through the administrative process. (Pl. Br. at 13.) But Plaintiff fails to explain how GMF could have done so in the present case. In fact, GMF is regulated, licensed and regularly examined by the Massachusetts Division of Banks ("DOB"). The DOB routinely reviews GMF's and other creditors' account files and forms and has never concluded that their pre-sale notices were lacking or non-conforming in some manner nor has the DOB recommended that GMF or any other creditor amend their pre-sale notices.

Finally, Plaintiff claims that the "plain meaning of the statutes precludes any notion that GM[F] would be subject to any unfair surprise." Not so. For the reasons stated above, and in GMF's opening brief, the applicability of § 9-614(3)'s safe-harbor was far from "plain." On its face, § 9-614(3) applies to pre-sale notices for repossessed motor vehicles: there was nothing in the RISA or the UCC that "displaces" it. The text of § 9-614(3) promises creditors that, by using its language, their pre-sale notices would be deemed "sufficient." So, by applying the "plain meaning of the statutes," a creditor could reasonably conclude that it *could* rely on the wording provided by § 9-614(3)'s safe-harbor.

### III. Plaintiff fails to state a claim under Chapter 93A.

#### A. By relying on § 9-614(3)'s safe- harbor, GMF did not engage in "unfair, deceptive, and/or unconscionable" practices.

In her opposition, Plaintiff claims that GMF violated § 2 of c. 93A because (1) GMF's pre-sale notices violated § 9-614 of the UCC, and (2) a violation of the RISA is a *per se* violation of c. 93A. (Pl. Br. at 14-15.) These arguments fail for three reasons. First, there was no violation of either the UCC or the RISA because *Williams* should not be applied retroactively. Second, Plaintiff concedes that GMF's pre-sale notices complied with the safe-harbor language in § 9-614(3). To the extent that, in light of *Williams*, this could be deemed a violation of § 9-614, such a violation was inadvertent—not "immoral, unethical, oppressive, or unscrupulous." Plaintiff alleges no facts to support her suggestion that GMF had improper motives in wording its pre-sale notice the way it did—in accordance with § 9-614(3)'s safe-harbor. And she alleges no facts showing that variations in this wording caused *any* injury—let alone "substantial injury"—to recipients. Third, that a violation of the RISA is a *per se* violation of c. 93A is irrelevant because Plaintiff does not identify any violation of the RISA. To the contrary, Plaintiff attaches to her brief a post-sale deficiency notice showing that GMF *complied*

11

with the RISA's substantive requirements when computing her deficiency. In accordance with M.G.L. c. 255B, § 20B(e), GMF reduced Plaintiff's indebtedness by the "fair market value" of her vehicle. The only alleged violation was UCC § 9-614(3).

### B. Plaintiff fails to identify any objective, identifiable harm separate from the alleged violation.

Yet even if Plaintiff could show that GMF violated c. 93A—and she cannot—the Amended Complaint still fails to state a claim because Plaintiff does not identify any objective, identifiable harm that this supposed violation caused. As GMF noted in its opening brief, a Plaintiff asserting a claim under c. 93A must identify an economic injury that is *distinct from the violation itself*. (GMF Br. at 19, citing *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017), and *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017)). Because the Amended Complaint fails to do so, it does not state a claim under c. 93A.

In her opposition, Plaintiff makes no attempt to distinguish *Shaulis* and *Mulder*, which are controlling authority on this issue. Indeed, she fails even to cite these cases. Instead, she relies on the SJC's decision in *Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 800 (2006),[10] citing it for the proposition that "depriving consumers of vital information . . . constitutes an injury under 93A." (Pl. Br. at 16.)

*Hershenow* actually stands for the opposite proposition. In that case, the plaintiffs alleged that a car-rental company failed to comply with a statute governing "collision damage waivers." The defendant's rental contract included a collision damage waiver with various exclusions barred by statute. The plaintiffs, however, did not get into an accident, did not have

---

[10] Plaintiff also relies on this Court's decisions in *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 96 (D. Mass. 2016), and *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015), which preceded *Shaulis* and *Mulder*. To the extent they conflict with *Shaulis* and *Mulder*, they are no longer good law.

12

any occasion to invoke the collision-damage waiver, and so suffered no economic damages from the statutory violations. Accordingly, the SJC held that the plaintiffs failed to state a claim under c. 93A. It emphasized that, to establish a claim under c. 93A, "there must be a 'causal connection between the seller's deception and the buyer's loss.'" 445 Mass. at 797, *citing Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795, 801 (1976). In the present case, as in *Hershenow*, Plaintiff has alleged no economic loss.[11] *A fortiori*, she cannot establish a causal connection between the alleged deception and her (non-existent) loss.

## CONCLUSION

For all the foregoing reasons, GMF respectfully requests that the Court grant its Motion to Dismiss, dismiss the Amended Complaint with prejudice, and enter judgment for GMF.

Respectfully submitted,

AMERICREDIT FINANCIAL SERVICES, INC.
d/b/a GM FINANCIAL,
By its attorneys,

/s/ Michael T. Grant
Michael T. Grant, BBO #677893
Charles A. Ognibene, BBO #377840
LECLAIRRYAN PLLC
60 State Street, Twenty-Third Floor
Boston, MA 02109
(617) 502-8200
michael.grant@leclairryan.com
charles.orgnibene@leclairryan.com

---

[11] She does not, for example, allege that she would have—or, indeed, *could* have—redeemed her vehicle if she had known that her account would be credited with the vehicle's "fair market value" rather than the amount it was sold for.

Robert J. Brener (admitted *pro hac vice*)
LECLAIRRYAN PLLC
One Riverfront Plaza
1037 Raymond Boulevard, Sixteenth Floor
Newark, New Jersey 07102
(973) 491-3347
robert.brener@leclairryan.com

## **CERTIFICATE OF SERVICE**

I, Michael T. Grant, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 1, 2018.

      /s/ Michael T. Grant
Michael T. Grant